Good afternoon. May it please the court, my name is Sean Seck. I represent James Parra, Councilman. Your Honor, this case I believe you'll find is a meat-and-potatoes manifest weight case. I don't think there's too much to it. It's our position that the Circuit Court erred in reversing the unanimous 3-0 decision of the Illinois Workers' Compensation Commission. Commissioners Lamborn, Tigard-O and Brennan unanimously found, not once but twice, that Mr. Parra met his burden of proving by a preponderance of the evidence that he suffered a right arm injury on November 14, 2012. I think the best illustration of the Commission doing their job in this case is the treatment of the two accidents in their decision. They look at the first accident claimed by the petitioner, 8-17-11. They analyze the record as a whole. In both cases, we have the petitioner testifying to one thing and we have witnesses called by the respondent testifying to another. So what the Commission does is they look outside the testimony of the witnesses to the record, to the medical records, to the other evidence that's offered. In the 8-17 accident, they find that the petitioner fails to meet his burden. They indicate that he worked full duty after the accident, between 8-17-11 and 11-14-12. They find that he saw his family doctor in the middle of that year and didn't talk about a back injury or that he was taking a leave four times a day like he testified to. And then they looked for any other evidence that they could find to substantiate his claim of the 8-17 accident. They found there wasn't any. And they ruled against the petitioner finding he failed to meet his burden. Then we turn to the 11-14-12 accident and they do the same thing. We've got the testimony of the petitioner as to what happened and how he injured himself, who he gave notice to. We have the testimony of the witnesses on the other side. And the commission once again looks to the record, looks to the medical evidence. And what do they find? Well, they find that he had never had an injury to his right arm prior to this. They find that he had never received medical treatment for his right arm at any time in his life prior to November 14, 2012. They find that he had never lost time from work as a sheet metal worker, a heavy line of work due to right arm problems. And they find that that is evidence of prior, proof of prior good health. They also look at the two treatment records, the first two treatment records in particular, Dr. Su, which is November 21, 2012, and then Dr. Freeburg, November 29, 2012. In both of those doctor's visits, the petitioner claims, I injured myself while working. And while he doesn't say the exact day, he says last Wednesday for Dr. Su and last Wednesday prior is in fact the date of accident. And for Dr. Freeburg, there's a typo in it, but he actually gives the exact date of accident. He says I was injured at work. Okay, so you have the claimant's testimony. The claim is supported not only by the claimant's testimony, but you've got, as you say, contemporaneous medical records, which are consistent with his account of the accident that day. Correct. Okay. So far so good. And not only that, but you also have, not only the history in that medical record, but then you also have the physical findings of the doctor. So we have proof of the change of his condition of good health documented in those medical records. Let me ask you this. Did the trial judge articulate a reason why she reversed the commission? I didn't have, we didn't have an oral argument. All I had was the order. So Judge, when we showed up for oral argument, we were handed the order. So I wasn't clear about it either time. If I were to venture a guess, and I anticipated perhaps you asking me that question, I think that the wording, I think that the trial judge struggled with the wording of the commissioner regarding credibility. It seems like both my opponent points to that, and maybe Judge Hanlon did as well, that they're both having trouble with the fact that the commissioner found the petitioner credible in one instance and not credible in another, and having trouble rectifying the two of those. And to address that, I think that's done all the time. I think that's done all the time. They found the claimant credible on the second injury. Correct. There's nothing surprising about that. No, I don't think so either, but I think that, to answer your original question, I think that is what the circuit court struggled with, was why did you find him credible, and then they used words like, after he fabricated an injury prior to that. So, I mean, if we're going to read into that, maybe Judge Hanlon is saying, how could he fabricate an injury and then turn around and be credible? And my answer to that is, we look at the record as a whole, don't we? We look at all of the circumstances, and that's what the commission did. That's what they're tasked to do. And, you know, I think it's clear that they did their job in this case. They looked at everything. They found that there was substantial collateral evidence to support his 1114 claim as it relates to the elbow. All right, I think that's clear. What about this notice issue that they raised? Okay, so with respect to notice, we have my chancellor's admissions. That's what the commission in their decision says they rely on. He testifies that a couple of days after they laid him off, he was aware of the injury. Well, he was laid off on November 19, 2012. No matter how he's skinned, that's inside the 45 days. Well, he also didn't claim and also testified that in about two hours after the accident on November 14th, he also spoke to chancellor on his co-worker's cell phone? Yes, that's correct, and I'm glad you brought that up. What's interesting about that is Mr. Chancellor calls Robert Muldoon, the co-worker, presumably to speak about what to do on the job and then tell him, you know, how long they have to be there and what they're going to finish up that day. My client, Mr. Parra, asks to have the phone that's in Mr. Muldoon's hand and then talks to him. Mr. Chancellor never addresses that in his testimony, but my client, Mr. Parra, says at that time, he says, I hurt myself today moving a pallet, and Mr. Chancellor said the effect of, I'm sending all of you home, go home and get a couple of days of rest because there's no more work for anybody for the next couple of days. And what's interesting about that is not only does Mr. Chancellor not address the fact that Mr. Parra told him that, but why else would they be talking on the phone? There isn't any reason for the two of them to converse. Well, even if the commission were to find, and tell me if I'm wrong here, that that conversation never took place, as I understand the record, Chancellor acknowledged that he became aware of the claimant's injury a couple of days or a couple of weeks after he was laid off. Correct. So that was still followed in the 45-day period, irrespective of anything else, correct? Correct. He omitted timely notice, basically. That's correct. Record page 264 and record page 279, 280 are the two sites that you're talking about. And then he didn't realize he was doing it, but he admitted to it. Right. And then on redirect, he cleans it up a little bit, but the cat's out of the bag at that point. Either way, you're inside the 45 days and you've gotten notice. Either way, there's ample evidence for the commission to point to, to find that the petitioner sustained his burden of proof in proving that he provided notice by the prominence of the evidence. Yeah. Are there any other questions? No. Okay. I don't believe there are. Thank you, Counsel. We have time to reply. Thank you. Counsel, you may respond. May it please the Court. Good afternoon, Your Honors. Counsel, my name is Bill Wormuth. I represent the plaintiff of Pele, Admiral Heating and Ventilating, Inc. The only person, a judge, in this case that was in the room with the petitioner at the time he testified said he is not credible. And I realize that the legal effect of the commission reviewing it, they sit as, you know, in the shoes of the arbitrator, but they weren't there when the petitioner, Mr. Parr, was testifying. And when Mr. Parr was testifying, he was testifying to not only an accident, alleged accident, on November 14th, 2012, but also one in August of 2011, which was completely and entirely rebutted almost as false and fake. But let's assume we take your, let's assume you're absolutely correct on that. What does it have to do with the November 14th? Couldn't they have found him credible on one and not credible on another for a variety of reasons? Your Honor, yes. But when you look at how they did it, it's questionable in that they're the back, but we will believe you regarding the elbow, which is really the only injury that matters here, because that's the one that requires surgery and takes the petitioner out of work. I understand your point, but let me ask you a point of question. Is there any case law that prohibits, that we can look at, that prohibits them from doing that? No, but it is within their Province purview? Province purview to look at the credibility. However, they were sitting there at the time when Mr. Parra was testifying during direct and cross about what he recalls from both accidents, and clearly the arbitrator said he's not credible. But isn't that the same in every case? The commission doesn't hear the lie testimony. That's correct. But why is this case different? I've never seen the petitioner is not credible point blank in a decision. And then to have the commission turn around and overturn just one fraction of the arbitrator's decision, the one that really matters, okay, they could have overturned the part with the back, we wouldn't be standing here today because there was nothing. So do we announce a decision that finds, we affirm the decision of the trial court, because since the commission found him not credible in the first accident, he must not have been credible in the second either, and so therefore we reverse in the face of, as you already said, the commission is the sole and exclusive judge of credibility. And I'm not aware of any cases that say where the cases are consolidated, they can't find it on one, and if they find it on one, they can't find it on the other. I mean, I don't understand how we enunciate that rule. Judge, you can write the opinion as we affirm the circuit court decision because the circuit court gave the commission two times, not one, two times to write their decision to explain what their bases were for that decision, and the commission chose not to do it the second time. And when you had asked counsel what were the bases for the circuit court's decision, the first time, Judge Lopez-Apero said, I'm demanding this for the commission to, saying that the commission's decision and opinion on review is substantively and procedurally deficient in a number of areas, including an articulation for the basis for the circuit court's decision and the reasonableness of its decision. Did you prepare that order? Yes, we did, but that was Judge Lopez-Apero's direct words. He wanted those in the order. So we wrote the order, and we wrote it together and submitted it to Judge Lopez-Apero for his authorization and stamping. I mean, what is the commission supposed to do with that order? Well, they didn't describe why they were reversing the arbitrator's decision in part. It was just, we're going to get to this point, and this is how we're going to do it. And even Judge Hanlon on the second appeal said, hey, I don't have a problem with their decision. I have a problem with how they came to it. There was no description or basis for the decision. Well, that's a little bit of a non sequitur, because if, in fact, the trial judge made that statement, it runs contrary to the Wells-Soto rule. We affirmed the decision, not the reasoning. So even if the reasoning in a given case, as you understand, is totally wrong, if we believe the court reached the right decision, it doesn't matter what the reasoning is. So you said, I don't have a problem with the decision, but I have a problem with the reasoning? Is that the basis for reversing it? The lack of basis for the reasoning. There was no description for why the commission was going to overturn the arbitrator's decision regarding the right element. Well, the commission still articulated some very specific reasons why they upheld the second claim. The claimants, you know, provided a consistent history of injury to both physicians. The physicians supported the claimant's testimony. I mean, they didn't just pull this out of the air. Didn't they give reasons why they found in favor of the claimant? Well, the one that stuck out to me was the claimant, or the medical records support the claimant's, basically the claimant's version of events, and that the respondent did not provide any medical evidence to counter those arguments. But that's circular logic, because what happens in an independent medical examination, we send the petitioner to a doctor, and they ask, how did you get hurt? And he's going to relay the exact same history, you know, supposedly, that he's told the other doctors. So how do you combat causation with that? We had other avenues to defend this case, which was, there was nobody at Admiral that knew anything about an August 2011 injury. There was nobody at Admiral that knew about a November 2012 injury. They did not believe that the petition was credible, and that's how we attacked it. We didn't have to go hire a doctor, but there was no point for that. No, and the November 14th, Chancellor admitted he knew about it, because the claimant told him about it. Well, that's not true. Chancellor, and maybe I could clean it up better, but he didn't know about the plaintiff's or the petitioner's injury until the petitioner filed the application for adjustment of claim in December of 2012. However, there was no, there was an amended application filed in January of 2013. Wait, he wasn't unnoticed that there was an injury? Maybe he didn't notice the extent of it. He wasn't unnoticed, now you're saying, of any injury to the claimant? I would argue no, because he's not, they, an application for adjustment of claim was received by Admiral, but it was the wrong date of accident, so does that put them on notice for all accidents for the entire time that Mr. Parr was employed by Admiral Heating? I don't know where you draw the line. I thought, didn't, as counsel alluded to, Chancellor testify that he received notice within a few days or a few weeks after he was laid off? Didn't Chancellor say that in direct? He said, on cross, he said, I found out about Mr. Parr's accident, Mr. Parr's accident when the notice came in, I believe he was referring to the application for adjustment of claim that was filed in December of 2012. He said nothing about being laid off, there was a quote, that didn't happen at all, you're saying? He never said I found out a couple of days or a couple of weeks after he laid off? Mr. Chancellor never testified that Mr. Parr had told him about an accident on the phone, he never testified to by Chancellor. Mr. Parr says he said that on the phone call, on Mr. Mulvaney's phone call, but Mr. Chancellor panicked and refuted that. That never happened. And the first instance that he found out about Mr. Parr's alleged injury was when they received, which I should have cleared up, but I believe it was the application that was filed in December of 2012, which didn't even have the correct date. And that was just, the both accidents, there were multiple applications filed changing the dates of accidents. So it was a little confusing. All right, so let me ask you a very pointed question. This is important, so think carefully about your answer here. Did Chancellor initially testify that he became aware that Clayman had alleged injury a couple of days or a couple of weeks after Clayman was laid off? Chancellor later testified that he first heard about Clayman's November 12th injury when Clayman filed his worker's compensation claim. Did he make both of those statements? He did, but one was, I believe, cleaned up. Well, okay, but he still made it initially, correct? He did, so, I mean, there's a question of... Right, but that's up to the commission. I mean, you have two conflicting versions here. You don't want to represent he never said it if he did and cleaned it up later, okay? Okay, but I want to represent that he didn't say, I knew about an accident. He's saying, I knew when Parr filed an application, he's saying, I knew that he alleged, and he's saying that I was injured on this date. That's where I think there's a confusion. But even still, the main issue is whether Parr was even injured at work. Even if we take the notice issue out of it, I think it's a red herring, because there's nothing to say that James Parr was injured while he was working. He said he was injured, and they don't need anything more than that, do they? Does the law require any corroboration of the claimants at all? I mean, seriously. No, but the claimant needs to be credible, and the arbitrator said he's not credible. Actually, the arbitrator only said he wasn't credible is the one claim. Arbitrator didn't say he wasn't credible as to the other. Well, the arbitrator denied both claims for the petitioner. Yeah, but the denial of the second claim, the November claim, came in a paragraph that had nothing to do with the statement of non-credibility. Non-credibility was addressed to, I believe, the August accident. I believe both accidents are tied together. James Parr goes in in November 2012 and says, I injured myself in August of 2011, both my back and my right arm, and he's the one that sets the ball in motion. They filed two applications for adjustment of claim, and to sit there and parse out the two I think is unfair. I've never seen an arbitrator write that the petitioner is not credible. I don't know. If you're saying it only applies to one claim, I believe it applies to the entirety of the petitioner's testimony. But he testified to an injury that nobody else corroborated in August of 2011 when he wasn't even on the job site. There's testimony about the dates. He wasn't even at that job site when he claims he was injured about throwing 50 pounds. Let me just wrap up to the point of the question. So if this claimant ever gets injured in the future on the job, he can never collect because an arbitrator has found him not credible, according to you. I'm saying according to these two claims. But they're separate claims. Separate claims. If he was going in a separate job and separate incident, that would be an entirely different story. What about if he stays in this? Is he still working for this company? He does not work for this company anymore. Okay. Very good. Thank you. Thank you for your time. Counsel may reply. I'll be brief. I know the day is late. Just so it's clear, the Petitioner never claimed a right arm injury in the 1711 accident whatsoever. He had never claimed a right arm injury for any time prior to November 14th, 2012. And I think, Justice, you were asking some questions about maybe kind of alluding to that heightened scrutiny. I know there's been a couple of cases out there that have talked about where the Commission reverses the arbitrator on an issue of credibility, although obviously it hasn't been, you know, that's not case law. Obviously, I know that that's not the law of the land right now. And I also would say that in this case, it would pass any kind of heightened scrutiny test as well, just because of the amount of ancillary evidence that, as you indicated correctly, in the bottom of page 5 of the Commission's decision, they go through the litany of reasons that they support their decision. They say he has an MRI. The MRI shows a torn collateral ligament. He works as a sheet metal worker. We find that it would be unlikely that he would be able to continue work as a sheet metal worker with a torn collateral ligament in his elbow. Even just that is enough. So with that, I thank you all for your time today, and have a good afternoon. Thank you. Thank you. Thank you, Counsel Bullock, for your arguments in this matter. I have taken your advisement, written disposition shall issue.